## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## GRAND RAPIDS DIVISION

STATE OF MICHIGAN,      )
                                  )
v.                                 )    CRIMINAL ACTION NO.:
                                  )    1:24-cv-672
BRIAN KEELY,            )
                                  )
               Defendant.   )

## NOTICE OF REMOVAL OF CRIMINAL ACTION TO FEDERAL COURT

Pursuant to 28 U.S.C. §§ 1442 and 1455, Defendant Brian Keely ("Defendant" herein), through counsel, Marc Curtis of the Curtis Law Group, PLLC, and Lance J. LoRusso of LoRusso Law Firm, P.C. hereby timely removes this action from the 62-B District Court to the Western District of Michigan, Grand Rapids Division following his June 5, 2024 arraignment. Copies of all process, pleadings, and orders served upon Detective Sergeant Brian Keely ("D. Sgt. Keely") are attached as Exhibit A pursuant to 28 U.S.C. § 1455. In support of this Notice of Removal, Defendant states the following:

### I.    Background

The Sixth District Special Investigative Services, Fugitive Team is a Regional Fugitive Task Force law enforcement unit operated by the United States Marshal's Service. The Fugitive Team operates as a part of the Western District of Michigan Fugitive Task Force.

The Fugitive Team's primary mission is to investigate and arrest, as part of joint law enforcement operations, persons who have active state and/ or federal warrants for their arrest. The intent of the joint effort is to investigate and apprehend local, state, and federal fugitives, thereby improving public safety and reducing violent crime.

The Fugitive Team is comprised of Deputy United States Marshals and duly deputized Task Force Officers (TFO) who serve as federal officers - Special Deputy United States Marshals - pursuant to Special Deputations. Exhibit B is copy of the current Special Deputation of Defendant clothing him with the authority and status of a Deputy United States Marshal. The law enforcement agencies participating in the Fugitive Team memorialized their participation in the Fugitive Team through Memoranda of Understanding (MOU). Attached as Exhibit C is the MOU between the United States Marshals Service (USMS) and the Michigan Department of State Police. The Fugitive Team operates pursuant to the authority conferred on United States Marshals and Special Deputy United States Marshals by the Presidential Threat Protection Act of 2000[1] providing specific statutory authority for such task forces to assist state, local, and other law enforcement agencies in locating and apprehending fugitives. See Exhibit D.

---

[1] See P.L. 106-544 December 19, 2000 114 STAT 2715.

Further, attached as Exhibit E is a 1995 opinion of then United States Attorney General Howard M. Shapiro confirming the authority of United States Marshals and Special Deputy United States Marshals to investigate, pursue, and apprehend fugitives wanted solely on state charges.

At all times relevant to the case *sub judice*, Defendant was acting as a member of the Fugitive Team and a Special Deputy United States Marshal designated as a Task Force Officer or TFO. Further, at all times relevant, Defendant was utilizing equipment and training provided by the USMS and following policies and procedures of the USMS regarding the apprehension of fugitives.

On April 17, 2024, Defendant and other members of the Western Michigan Fugitive Task Force assisted Kent County's Metro Pattern Crime Team ("MPACT" herein) team at their request. Detectives with MPACT were investigating and attempting to arrest Samuel Sterling. Samuel Sterling was a fugitive from various courts with violent tendencies; including carrying concealed weapons, fleeing and eluding police, robbery, receiving and concealing stolen firearms, possession of a weapon by a felon, and several domestic violence arrests.

On April 17, Samuel Sterling had several outstanding warrants. Defendant attended a briefing at the Wyoming Police Department with other task force detectives to be briefed on the planned arrest of Sterling. In the briefing, the team

learned of Sterling's criminal history as described above. Defendant also learned that Detective Jeff Woollam with Kentwood Police Department and MPACT observed Sterling carrying a heavy object in his right pocket, which they believed, based upon their training and experience, was a concealed pistol. See United States v. Briggs, 720 F.3d 1281 (10th Cir. 2013)

Social media posts of Sterling with weapons and boasting about fleeing from the police corroborated this belief. The Detectives believed if they attempted a traffic stop with marked patrol cars, Sterling would likely flee using his vehicle placing the public at heightened risk of injury. Due to Sterling's previous boasts regarding fleeing from police and his history of doing so, MPACT detectives planned to attempt an arrest of Sterling when he was on foot away from the rental vehicle he was using and away from his home to avoid the dangers that ensue with a potential police chase.

At 10:00 AM, detectives from MPACT and the Fugitive Team arrived in the area of 52nd St. and Kimball Ave. SE in Kentwood, close to where Sterling was reported to be living at 1317 52nd Avenue NE, and began surveillance. At 11:00 AM, MPACT detectives advised on the radio that Sterling was leaving his residence in a white Chevrolet Equinox SUV, Sterling was driving, and an unknown female sat in the passenger seat.

Defendant positioned his assigned Hyundai Palisade at South Glow Ct. SE and observed Sterling driving west on 52nd St. in the right lane. Defendant began to follow Sterling and relay his activity to the detective group on the radio. Defendant then observed Sterling pull into the Speedway gas station at 22nd St. and Eastern Ave. Following Sterling's entrance to Speedway, Defendant made a right turn onto northbound Eastern Ave. and advised the detective group on the radio that he could no longer see Sterling from his vantage point. Several detectives reported that Sterling was outside his vehicle, on foot, looking at his tires.

At this point, the fugitive team discussed on the radio that this would be an opportune time to affect the arrest of Sterling before he was able to use the vehicle to escape. Defendant turned into the Speedway parking lot behind detectives Nagtzaam and Wortz's vehicles and awaited a signal to effect Sterling's arrest. Following the coordination of the plan to box Sterling's vehicle in, Defendant heard the "move in" instruction from his radio. At that point, undercover vehicles with flashing emergency lights approached the front and rear of Sterling's vehicle with Defendant's vehicle positioned on Sterling's passenger side.

Upon seeing approaching law enforcement officers, Sterling fled on foot. Defendant followed the foot pursuit with his vehicle. Defendant did so consistent with his training as a Task Force member and TFO and in compliance with recognized law enforcement techniques and tactics, the operational briefing, and

the policies and procedures of the Task Force and the USMS. Following the foot pursuit in a USMS-issued vehicle served the following, lawful purposes: allow Defendant to use his USMS radio to effectively communicate during the chaos of the moment, use the emergency lights in his USMS-issued vehicle to signal to the public that an emergency situation was taking place, to keep the fugitive Sterling in visual range if Task Force members chasing Sterling on foot were to lose sight of him, for Defendant to maintain his energy in order to assist the presumably exhausted Task Force members chasing Sterling on foot in apprehending and handcuffing Sterling, and to allow Defendant to transition into a roaming outer perimeter role and potentially re-acquire Sterling if he were to escape the trailing Task Force members. Once it was safe to do so, Defendant carefully crossed 52nd St and drove into the Kum and Go parking lot directly south of the Speedway gas station. Defendant did not see Sterling at the time, but he deduced that this would be his location based on his last known direction of travel and Sterling's manifested intent to once again avoid lawful arrest. Defendant then drove further south into a general parking lot area that serviced several businesses including a Burger King. It was at this point that Defendant regained sight of Sterling who was still evading lawful arrest by the USMS Task Force.

Defendant observed that Sterling appeared to be headed for the interior of Burger King to evade officers. Defendant, reasonably concerned that Sterling's

entrance would cause a risk to civilians within the restaurant given his prior criminal, dangerous propensities, status as an armed fugitive, and prior and continued efforts to resist lawful arrest, endeavored to reach the door of the restaurant in his vehicle before Sterling could do so. Defendant drove at an angle which he believed would cut off Sterling from the door, prevent him from entering the restaurant, and cause him to change direction away from the Burger King lobby. As Defendant's vehicle approached the restaurant door, Sterling ran in front of Defendant's vehicle toward the entrance to the Burger King instead of avoiding the restaurant entrance. In response, Defendant immediately applied the brakes in order to stop prior to making contact with Sterling.

Defendant's vehicle began to skid, and he lost all braking and steering power due to standing puddles of water caused by hard rain in the area earlier that day. Due to the standing water, the front passenger side quarter panel of Defendant's issued USMS vehicle impacted the side of the building at an angle. Defendant saw Sterling up against the wall at the passenger side front corner of his vehicle, but Defendant could not tell whether or not he had made contact with Sterling. However, Defendant backed up his vehicle in order for officers to properly and safely address Sterling.

After Defendant exited his vehicle, he told several detectives attempting to physically control Sterling to call EMS and to stop attempting to handcuff

attempts. However, Sterling was still actively resisting arrest and had enough

strength to make it difficult to for Task Force members to handcuffed him.

Therefore, Task Force Members were forced to secure Sterling in handcuffs in

order to effect his lawful arrest, assess his injuries, and allow EMS to treat him

upon their arrival. Fire and EMS quickly arrived at the scene and notified

Defendant that Sterling would be transported to Metro Hospital in Byron Center.

Unfortunately, despite the lifesaving efforts of Task Force members and EMS,

Sterling later succumbed to his injuries.

In the fair and just adjudication of the instant criminal charges, Defendant

would be entitled to raise Supremacy Clause Immunity per Article VI, Paragraph 2

of the U.S. Constitution, as well as any and all state-based immunities available to

him. *Cunningham v. Neagle*, 135 U.S. 1, 10 S. Ct. 658, 34 L. Ed. 55 (1890); *United

States v. Tanella*, 374 F. 3d 141 (2004) and *State of New York v. Tanella*, 281 F.

Supp. 606 (E.D. N.Y. 2003)(State-level and common law defenses).

## II. <u>Grounds for Federal Officer Removal Under 28 U.S.C. §1442</u>

The instant case is both ripe and appropriate for removal to this honorable

court. 28 U.S.C. §1442 reads, in relevant part, as follows:

> **(a)** A civil action *or criminal prosecution* that is commenced in a
> State court and that is against or directed to *any of the following* may
> be removed by them to the district court of the United States for the
> district and division embracing the place wherein it is pending:

8

**(1)** The United States or any agency thereof *or any officer (or any person acting under that officer) of the United States* or of any agency thereof, *in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension* or punishment of criminals or the collection of the revenue.

**(c)** Solely for purposes of determining the propriety of removal under subsection (a*), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer--*
**(1)** *protected an individual in the presence of the officer from a crime of violence*;
**(2)** provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or
**(3)** *prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury*.

**(d)** In this section, the following definitions apply:
**(1)** The terms "civil action" and *"criminal prosecution" include any proceeding* (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.
**(2)** The term "crime of violence" has the meaning given that term in section 16 of title 18.
**(3)** The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.
**(4)** The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

"Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Willingham*, 395 U.S. at 407. The federal removal statute permits removal of any "criminal prosecution that is commenced in a State court" against "any officer…of the United States or the agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals." 28 U.S.C. § 1442(a)(1).  The removal statute "grant[s] district court jurisdiction over cases in which a federal officer is a defendant." *Mesa v. California*, 489 U.S. 121, 136 (1989). The statute is mandatory. City of Norfolk, Va. v. McFarland, 143 F. Supp. 587, 589 (E.D. Va. 1956).

"[T]he removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting ... within the scope of their authority.'" Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 150, 127 S. Ct. 2301, 2306, 168 L. Ed. 2d 42 (2007).

As Justice Blackmun held, "This principle is entirely consistent with the purpose underlying the removal of proceedings commenced in state court against a

federal officer. Historically, removal under § 1442(a)(1) and its predecessor statutes was meant to *ensure a federal forum* in any case where a federal official is entitled to raise a defense arising out of his official duties. The act of removal permits a trial upon the merits of the state-law question free from local interests or prejudice. See *Colorado v. Symes*, 286 U.S. 510, 517-518, 52 S.Ct. 635, 637, 76 L.Ed. 1253 (1932)(Emphasis added); *Maryland v. Soper*, 270 U.S. 9, 32, 46 S.Ct. 185, 190, 70 L.Ed. 449 (1926). It also enables the defendant to have the validity of his immunity defense adjudicated, in a federal forum. *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969). For these reasons, this Court has held that the *right of removal is absolute* for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' *Ibid.* Arizona v. Manypenny, 451 U.S. 232, 241–42, 101 S. Ct. 1657, 1664, 68 L. Ed. 2d 58 (1981)(Emphasis added). "At the very least, [the removal statute] is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969).

To qualify for removal, a defendant need only show (1) that the conduct concerns actions undertaken as a federal officer, (2) "that the suit is 'for a[n] act under color office,'" and (3) "raise a colorable federal defense." *Jefferson County,*

11

*Ala. v. Acker*, 527 U.S. 423, 431 (1999) (quoting 28 U.S.C. § 1442(a)(3)). The notice of removal must simply contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1455(a).

In considering the issue, the Court should enter an order for summary remand only where it "clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted." 28 U.S.C. § 1455(b)(4). Otherwise, "it *shall order* an evidentiary hearing to be held promptly and, after such hearing, shall make such disposition of the prosecution as justice shall require." 28 U.S.C. § 1455(b)(5). If removal is permitted, the Court "shall so notify the State court in which prosecution is pending, which shall proceed no further." 28 U.S.C. § 1455(b)(5).

**A. Detective Sgt. Keely is an Officer of the United States.**

Detective Sgt. Keely has served as a TFO with the United States Marshals Service (USMS) since 2023. Detective Sgt. Keely was assigned to the 6th District Special Investigative Services, Fugitive Team, in 2023. Detective Sgt. Keely's primary responsibilities were performing as plain clothes or an undercover detective. Detective Sgt. Keely operated unmarked vehicles in order to facilitate covert

surveillance of wanted fugitives. The Fugitive Team assisted[2] other law enforcement agencies with the location and arrest of violent high-risk fugitives.

**B. Detective Sgt. Keely was Acting "Under Color of his Office."**

The test for whether a federal officer was acting under color of his office is not onerous.  The removal statute requires a "causal connection between what the officer has done under asserted official authority and the state prosecution." *Soper*, 270 U.S. at 33. All this requires is that "his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution." *Id.* In addition, the removal statute permits a law enforcement officer to show he acted "under the color of his office" if he acts to protect another person from an act of violence, provides assistance to someone threatened with bodily harm, or acts to prevent the escape of someone he reasonably believed had committed, or was about to commit, a crime of violence causing serious bodily injury. 28 U.S.C. § 1442(c).

In determining whether the defendant was acting under "color of his office," a court credits the removing party's theory of the case, rather than deciding the

---

[2] Although Defendant was indeed a federal officer at the time of these events, he would still be entitled to removal as a "*person acting under that officer) of the United States* or of any agency thereof" per 28 U.S.C. §1442(a)(1) as the USMS was in charge of the Fugitive Team and both initiated and directed the operation at issue aimed at arresting fugitive Sterling.

merits of the underlying case for jurisdictional purposes. *See Jefferson County*, 527 U.S. at 432.

**Detective Sgt. Keely was Performing his Official Duty.**

The 6th District Special Investigative Services, Fugitive Team's mission is to assist other law enforcement agencies with the location and arrest of violent or high-risk offenders who are attempting to evade arrest. Kent County's MPACT team requested the services of the Western Michigan Fugitive Task Force in an attempt to arrest Sterling on April 17, 2024. As mentioned above, Detective Sgt. Keely, alongside approximately five other task force detectives, attended a briefing regarding the planned arrest of Sterling and assisted in effectuating the planned arrest.

**C. Detective Sgt. Keely has a Colorable Federal Defense of Immunity Under the Supremacy Clause of the United States Constitution.**

The final requirement for removal is the averment of a colorable federal defense. *See Mesa,* 489 U.S. at 129. Under the Supremacy Clause of the U.S. Constitution, federal officers are immune from state prosecution if "(1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do." *Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988).

For an act to be "necessary and proper," "two conditions must be satisfied: (1) the actor must subjectively believe that his action is justified; and (2) that belief must be objectively reasonable." *New York v. Tanella*, 374 F.3d 141, 147 (2d. Cir. 2004) (citing *Whitehead v. Senkowski*, 943 F.2d 230, 234 (2d. Cir. 1991)). Courts must "evaluate the circumstances as they appear to [the] federal officer [] at the time of the act in question, rather than the more subtle and detailed facts later presented to a court." *Wyoming v. Livingston*, 443 F.3d 1211, 1229 (10th Cir. 2006). Common circumstances under consideration when evaluating an act include "whether an arrestee posed a threat to the officers, to themselves, *or to others and whether the arrestee resisted arrest or attempted to evade officers*." *Farris v. Oakland Cnty., Mich.*, 96 F.4th 956, 965 (6th Cir. 2024)(Citing *Graham v. Connor*, 490 U.S. 386 (1989))(Emphasis added). Importantly, the removal statute "is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Mesa*, 489 U.S. at 133 (quoting *Willingham*, 395 U.S. at 409). "The officer need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. It is axiomatic that federal officers, like Defendant Keely, "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation" and courts are

15

instructed to evaluate those decisions without the application of 20/20 hindsight. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Detective Sgt. Keely subjectively believed that his action was justified, and his belief was objectively reasonable. As Sterling ran through the Burger King parking lot, Detective Sgt. Keely observed Sterling heading toward the Burger King's entrance to evade officers which caused Detective Sgt. Keely to believe that Sterling posed a danger to the patrons and employees within the restaurant. This belief stemmed from the facts of the earlier briefing on April 17th where Detective Sgt. Keely learned that Sterling appeared to be carrying a weapon and from Detective Sgt. Keely's training and experience from over twelve years of fugitive work.

Acting upon this belief, Detective Sgt. Keely sought to reach the Burger King entrance before Sterling in order to keep the innocent lives within the restaurant safe from harm. Further, Keely was following law enforcement protocols and training he acquired as a TFO and federal officer in an effort solely aimed at apprehending Sterling, a dangerous, armed fugitive. The entire operation to apprehend Sterling was a federal one involving the Fugitive Team comprised of Deputy United States Marshals and duly deputized Special Deputy United States Marshals including Defendant. Finally, the injury suffered by Sterling was not due to intentional acts. Keely's actions in paralleling the foot chase initiated by

Sterling, continued by Sterling, and demonstrating state and federal crimes[3] by Sterling constituted standard law enforcement procedures and actions consistent with the policies and procedures as well as the training provided to Fugitive Team members by the USMS. As Keely's efforts and intentional acts were solely related to his efforts to arrest a fugitive being pursued by federal officers, and he held a reasonable, subjective belief that Sterling was wanted, Sterling was a danger to the community, Sterling presented an immediate threat to the community if he was not apprehended, and that preventing Sterling from entering the Burger King restaurant was necessary and appropriate, he is entitled to Supremacy Clause Immunity. See *Texas v. Kleinert*, 143 F.Supp.3d 551 (W.D.Tex 2015) Aff'd 855 F.3d 305 (5th Cir. 2017).

As to a viable Federal defense, Defendant Keely is also entitled to raise any and all state-level and common law defenses to the pending charges in a federal venue. See *United States v. Tanella*, 374 F. 3d 141 (2004) and *State of New York v. Tanella*, 281 F. Supp. 606 (E.D. N.Y. 2003).

---

[3] Sterling's criminal history included carrying concealed weapons, fleeing and eluding police, robbery, receiving and concealing stolen firearms, possession of a weapon by a felon, and several domestic violence arrests.

### III. Upon Removal, This Court Will Dismiss the Criminal Case Pending Below in the Michigan District Court and Maintain Jurisdiction Throughout the Pendency of the Criminal Case

28 U.S.C. §1447 reads, in relevant part, as follows:

**(a)** In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise.
**(b)** It may require the removing party to file with its clerk copies of all records and proceedings in such State court or may cause the same to be brought before it by writ of certiorari issued to such State court.

Contemporaneously herewith, Defendant Keely files the relevant indictment, arraignment notice, entry of not guilty formally entered at the June 5, 2024 arraignment, bond paperwork, and all "all records and proceedings in such State court" per 28 USC §1447(b).

### IV. Conclusion

For the foregoing reasons, Detective Sgt. Keely respectfully request that this criminal action be, and is hereby, removed to the United States District Court for the Western District of Michigan, Grand Rapids Division *instanter*, that this Court enter such other and further orders as may be necessary to accomplish the requested removal and promote the ends of justice, and that the criminal action now pending in state court "proceed no further" per 28 U.S.C. §1455(b)(5).

*Signatures on following page*

18

Respectfully submitted this 28th day of June, 2024.

*/s/ Marc E. Curtis*
Marc E. Curtis, Esq
Michigan Bar No. P59274
Attorney for Defendant


*/s/ Lance J. LoRusso*
Lance J. LoRusso, Esq
Georgia Bar No. 458023
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
GRAND RAPIDS DIVISION**

STATE OF MICHIGAN )
          )
     Plaintiff, )
          )       Case No.1:24-cv-672
          )
     v. )
          )
BRIAN KEELY )
          )
     Defendant. )

<u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorneys hereby certify that the foregoing document, which was prepared using Times New Roman, 14-point font, with the Clerk of Court using the CM/EFF system which will automatically send email notification of such filing to the attorneys of record.

This 28th day of June, 2024.

                   */s/ Marc E. Curtis*
                   Marc E. Curtis, Esq
                   Michigan Bar No. P59274
                   Attorney for Defendant

                   */s/ Lance J. LoRusso*
                   Lance J. LoRusso, Esq
                   Georgia Bar No. 458023
                   Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**GRAND RAPIDS DIVISION**

| | | |
|---|---|---|
| STATE OF MICHIGAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-672 |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN KEELY | ) | |
| | ) | |
| Defendant. | ) | |

<u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the within and foregoing with the Clerk of

Court using the CM/ECF system.

This 28th day of June, 2024.

<u>/s/ Marc E. Curtis</u>
Marc E. Curtis, Esq
Michigan Bar No. P59274
Attorney for Defendant

<u>/s/ Lance J. LoRusso</u>
Lance J. LoRusso, Esq
Georgia Bar No. 458023
Attorney for Defendant
